UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LEANNA MERCEDES,

                Plaintiff,

   -against-

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK, EMMANUEL
POLANCO, individually and on behalf, of the
Department of Education of the City of New York,

                Defendants.
------------------------------------------------------------X

**16 Civ 3284 (VSB)**

**AMENDED COMPLAINT**

      The Plaintiff LEANNA MERCEDES, by her attorney, STEWART LEE KARLIN, respectfully shows to this Court and alleges as follows:

1. Plaintiff LEANNA MERCEDES (hereinafter at all times mentioned "Plaintiff") is an employee of the Defendant the Department of Education of the City of New York (hereinafter "DOE").

2. Defendant Department of Education of the City of New York (hereinafter Defendant or "DOE") is charged by law with responsibility for the operation, management and control of the New York City public education and is within the jurisdiction of this Court. At all times relevant, Defendant employs more than fifteen individuals and is thus an employer within the meaning of Title VII.

3. EMMANUEL POLANCO, is the Principal at MS 80 and was acting individually and on behalf of the DOE at all time relevant in the complaint.

4. At all times relevant, Plaintiff is an employee within the meaning of Title VII.

5. Plaintiff has been deprived of equal employment opportunities in violation of the Title VII.

6. Plaintiff has commenced this action pursuant to Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e et seq. Plaintiff duly filed a formal complaint with the EEOC and a notice of right to sue letter was issued by the EEOC and this case is commenced within 90 days of receipt of the right to sue letter conferring concurrent jurisdiction on this Court.

7. Plaintiff, female, was employed at the DOE as an Assistant Principal. Plaintiff was initially hired on August 30, 2006 as a teacher at MS 80. In September 2008, she became a Dean at MS 80.

8. In July 2010, Plaintiff enrolled in the Leadership Program and completed her residency at MS 454, as an Educational Administrator.

9. In February 2011, she returned to MS 80 and became the Acting Assistant Principal in August 2011 and was officially appointed in February 2012.

10. Emmanuel Polanco became the interim acting principal in April 2012.

11. Mr. Polanco gave Plaintiff a "D" rating (doubtful) on annual review claiming that he did not have sufficient time to observe her.

12. However, he gave the other two male Assistant Principals satisfactory rating with the same observation time.

13. Plaintiff filed an internal EEO charge on July 26, 2012 for gender discrimination against Polanco and the discrimination charge was sustained by the EEO office of the DOE.

14. The Principal recommended Plaintiff's probationary discontinuance, however, the Superintendent, Sonia Menendez rejected the Principal's recommendation and Plaintiff continued for the 2012-2013 school year as an AP.

15. For instance, on or about August 9, 2012, Plaintiff met with Ms. Sonia Menendez, (Community Superintendent District 10) to discuss how the school year ended (2011-2012) (which Ms. Menedez refused to sign-off on) because Mr. Polanco gave Plaintiff a Doubtful Rating, claiming he did not know Plaintiff well enough to rate her otherwise. However, he rated Plaintiff's two male counterparts Satisfactory, even though he had the same amount of time supervising them.  This was the basis of Plaintiff's first OEO case.

16. During this meeting Ms. Menendez encouraged Plaintiff to send her resume to other schools and gave Plaintiff specific principals to pursue.  Eventually, it led to the MS 308 interview and possible transfer, which Mr. Polanco refused to release Plaintiff to.

17. On August 30, 2012, the Principal threatened Plaintiff with physical violence when he stated inches from Plaintiff's face "Someone would get hurt and it will not be me."  The Principal threatened Plaintiff when no one else was with them at that moment; however, when this threat was made, the school was in session but only for the administrators (principal and assistant principals) and all facilities staff (i.e. building manager and custodians) in order to prepare for the teachers and students.

18. This threat was due to retaliation for her EEO complaint and due to her gender.

19. As a result of the physical threat, Plaintiff was scared and filed a police report (Police Report No. 9078) on or about August 30, 2012.

20. In addition, Plaintiff memorialized the events that transpired on August 30, 2012 by sending Principal Polanco an e-mail where Plaintiff CC (copied) Sonia Menendez (Community Superintendent District 10), Steve Bennett (CSA Bronx Field Director), and Rosemary Stuart (Executive Director EPO Management).  Plaintiff did this because she was scared of Principal Polanco.

21. Furthermore, Plaintiff sent the e-mail to Tiffany Lyttle, an attorney for the OEO office of the NYCDOE.

22. Thereafter, Ms. Menendez met with Plaintiff and encouraged her to send her resume to her and other schools, including MS 308.  In addition, Plaintiff spoke and met with Mr. Bennett, CSA Field Director.  Initially, Mr. Bennett told plaintiff that this was a matter that needed to be addressed by the superintendent.  Mr. Bennett did attempt to speak with Mr. Polanco and stated "that this was the most toxic situation he had ever had to deal with."  Additionally, Plaintiff also met with Ms. Stuart, who indicated that she would refer to the issue to the appropriate party.

23. However, Plaintiff was retaliated against for filing the police report, due to her gender and for filing a discrimination complaint as set forth below.

24. In September 2012, Plaintiff was accused by the Principal of corporal punishment from May 2012.  (The Principal is required to report corporal punishment within 48 hours and not several months later).  Plaintiff filed a rebuttal letter with OSI accusing the Principal of perjury.

25. In addition, on or about October, 2012, Plaintiff sought a transfer in and the transfer was set up by the Superintendent; however Principal Polanco denied the transfer request in October 2012.

26. More specifically, on or about October 2, 2012, Mr. Robert Mercedes, Principal of 390, came to the school to meet with Mr. Polanco and Plaintiff.  Mr. Mercedes shared that there was a vacancy for an Assistant Principal at MS 308 and that if Mr. Polanco was amenable that he (Mr. Polanco) could release Plaintiff and then Plaintiff would be reassigned to the Assistant Principal vacancy at MS 308.   In addition, Mr. Mercedes told

Plaintiff and Polanco that the deadline to have Plaintiff transferred to MS 308 was October 31, 2012. Mr. Polanco said "I will think about it." Principals are supposed to approve lateral moves, but in this case he prevented Plaintiff from moving because he did not want Plaintiff to be allowed to move into an Assistant Principal's position.

27. Mr. Robert Mercedes, as a CSA Representative, had met with Ms. Menendez (who retired on September 30, 2012) and Ms. Melodie Mashel (the new Community Superintendent District 10 as of October 1, 2012) to arrange for this "deal." Ultimately, nothing happened upon information and belief, Mr. Polanco was not reprimanded.

28. In December 2012, Plaintiff filed an additional retaliation complaint. Plaintiff filed a OSI complaint and also an OEO retaliation complaint because Mr. Polanco was committing perjury in corporal punishment charge he brought Plaintiff up on.

29. Plaintiff was interviewed by OSI investigator Mr. Gerald Danko and was subsequently advised that the perjury charges against Acting Interim Principal Polanco were substantiated.

30. OSI investigator Danko advised Plaintiff to file the additional retaliation charge.

31. On February 26, 2013, Plaintiff met with Ms. Melodie Mashel, the new Community Superintendent District 10, who also encouraged Plaintiff to move on. Plaintiff made several attempts on her own to find a new position however, with the D-rating no principal would consider Plaintiff unlike with the opportunity at MS 308 which was supported by Ms. Menendez. Ms. Mashel who was the presiding superintendent in October of 2012 felt that she could not make Mr. Polanco release Plaintiff because she was new and did not want to color their relationship.

32. In the 2012-2013 school year, Plaintiff for the first time in her DOE career received an unsatisfactory annual evaluation. This evaluation was due to Plaintiff's gender, retaliation for filing an EEO complaint and for filing a police report.

33. On or about, August 13, 2013, Plaintiff again met with Ms. Mashel to discuss the situation and her 2012-2013 rating which was an Unsatisfactory. Ms. Mashel, like Ms. Menendez, refused to sign-off on this rating.

34. Furthermore Ms. Mashel refused to sign Plaintiff's discontinuance as Mr. Polanco had requested.

35. The 2013-2104 school year commenced with Plaintiff having *No duties or responsibilities*. Ms. Mashel was fully aware of this.

36. Specifically, on or about September 2, 2013 Plaintiff sent Ms. Mashel an e-mail explaining that since Plaintiff arrived at the school that year, she was given no assignments to prepare for the launch of the 2013-2014 school year. Plaintiff also explained that she had not met with Mr. Polanco.

37. In the e-mail, Plaintiff further explained that on or about August 26, 2013, Plaintiff presented herself to him and asked what he would like for Plaintiff to do and that Polanco's response was "settle down anywhere." In addition, Plaintiff pointed out that Mr. Irizarry and Mr. Williams had met with Mr. Polanco and they were working to complete tasks for that week.

38. However, despite Plaintiff's efforts, she was given no duties and no responsibilities until much later on or approximately January 21, 2014 as per Mashal's intervention. By contrast, Plaintiff's male colleagues were given duties and responsibilities since the beginning of the 2013-2014 year by Mr. Polanco.

39. However, even though Plaintiff was being set up for failure, on her own initiative, she completed a building walk-through to review the status of the school, especially with the elevator construction and bathroom renovations since previously Plaintiff was always assigned the relationship with the Building Manager and the outside contractors. In addition, by her own initiative she also reviewed the NYS ELA/NYS Math/NYS Science Exam data; and set-up the main lobby for parent-student registration.

40. On or about September 17, 2013, Plaintiff met again with Ms. Mashel. This time, she offered to transfer Plaintiff to MS 254 with certain conditions--the main being that Plaintiff resigns her appointed position to take the AP vacancy at MS 254. The issue with this is that the principal at MS 254, Mr. Pozo, was interim acting and Ms. Mashel made clear that she was not going to keep him as the principal which means he would revert back to an A.P., the vacancy which Plaintiff was asked to fill. Had Plaintiff done that, she would have probably been reverted to a teacher's line.

41. On or about September 17, 2013, Plaintiff met again with Ms. Mashel. She offered to transfer Plaintiff to MS 254 with certain conditions--the main being that Plaintiff resign her appointed position to take the AP vacancy at MS 254. The issue with this is that the principal at MS 254, Mr. Pozo, was interim acting and Ms. Mashel made clear that she was not going to keep him as the principal which means he would revert back to an A.P., the vacancy which Plaintiff was asked to fill. Had Plaintiff done that, she would have probably been reverted to a teacher's line.

42. Plaintiff was still not given any role for the first half of the 2013-2014 school year until Superintendent Mashel finally stepped in and made Principal Polanco divide the work up equally among the three APs on or about January 2014. It should be noted that up until

January 21, 2014, Plaintiff was *not* allowed to perform any of her responsibilities and was not allowed to interact with the staff and students.

43. Specifically, on or about January 2, 2014, Ms. Mashel came to school and held a cabinet meeting, where she recognized Plaintiff's instructional expertise and told Mr. Polanco to divide the AP duties between the three Assistant Principals. APS.

44. In March 2014, Mr. Polanco hired Ms. Carmen Soto, an F-Status AP. She was given an office and all the necessary tools to effective fulfill the role of AP, whereas Plaintiff had no office or any access to important systems.

45. In the 2013-2014 school year, Plaintiff's annual review was again unsatisfactory for the second time in her DOE career.

46. Upon information and belief, the Principal again recommended Plaintiff's discontinuance but the Superintendent Mashel stepped in and prevented Plaintiff from being discontinued.

47. In addition, in May 2014, there was an OSI investigation regarding Plaintiff confiscating a cell phone. It should noted that the student subsequently retracted her allegation to Plaintiff and apologized for complaining about the incident. The investigation was completely biased and the allegation that there was a tug of war for the cell phone is false and even if true is not a violation of the Chancellor's regulations.

48. In addition, the fact that Plaintiff attempted to prevent a student from running out of the classroom is not violation of Chancellors regulations. There were other unsubstantiated and false charges brought by this Principal who was looking for any possible reason to discontinue Plaintiff as he had previously attempted on numerous occasions.

49. Finally, the Interim Acting Principal Polanco recommended Plaintiff's discontinuance as an AP and she was subsequently discontinued by Superintendent Mashel on January 13, 2015.

50. In addition, the Principal subjected Plaintiff to disparate treatment and a hostile work environment due to her gender and in retaliation for her complaints of discrimination to wit:

    (1) Subjecting Plaintiff to shorter deadlines to complete work then the similarly situated male APs;

    (2) Plaintiff job responsibilities were removed in her area of expertise (ELA and Social Studies) and assigned her science even though the test scores went up in ELA. Specifically Plaintiff used to supervise and manage the English Language Arts & Social Studies Departments, supervised ELA and MATH for Saturday Academy and, efforts for the 2011-2012 academic year resulted in 6.9% gains in ELA and 11.9% gains in Math. During 2012-2013 Plaintiff oversaw and managed the Science Department and made efforts for the 2012-2013 academic year resulted in 50.4% of students attaining a Levels 3 or 4 on the NYS Science Exam (a 6.2% increase over the 2012-2013 academic year). Thus proving that Plaintiff was a competent and effective instructional leader. Despite this, she was strip from her responsibilities;

    (3) There was a lack of communication with Plaintiff and he would not respond to Plaintiff's emails. Specifically, Plaintiff e-mailed Principal Polanco several times when she was not given an assignment for the 2013-2014 school year. Principal Polanco never replied

(4) In addition, once Plaintiff was given assignments and responsibilities on or around January 2014 as per Ms. Mashel's intervention, Principal Polanco continued to set Plaintiff up for failure. For instance, once Plaintiff was assigned tasks, Principal Polanco wanted Plaintiff to complete the assignments with no computer, no phone, no access to ARIS or ATS. Eventually, Principal Polanco gave Plaintiff a laptop with no access to systems and still no phone;

(5) Plaintiff was considered (despite having the most seniority) the lowest in the chain of command among the Aps. For instance, as one example because there are too many to list, an F Assistant Principal was hired and she was given an office and the necessary tools to excel. By contrast, Plaintiff who had seniority was not given the necessary tools, access to important systems and did not have an office.

(6) Plaintiff was excluded from meetings;

(7) Plaintiff's evaluations were not signed off by the Superintendent;

(8) Plaintiff was rated unsatisfactorily and set up for failure on purpose by Mr. Polanco. In addition to Ms. Mashel and Ms. Menendez who refused to sign Plaintiff's unsatisfactory ratings, other people also disagreed with Mr. Polanco's ratings and told him to rate Plaintiff satisfactorily to no avail. For example, the school was under the restructuring with an EPO - Educational Partner Organization. The EPO was Abyssinian Development Corporation, under the direction of Sheena Wright (the current President and CEO of United Way) and Dr. Sabrina Hope-King, Ed. Dr. King was also the Acting Superintendent and she also told Mr. Polanco to rate Plaintiff satisfactorily and to let her move on. Similarly, the next organization to partner with the school was The Center for Educational Innovation (CEI), there

were several people there that became apprised of the situation and tried to intercede on Plaintiff behalf, including Mr. Victor Lopez and Mr. Winston Riley; however Principal Polanco was determined to continue to destroy Plaintiff's career;

(9) Plaintiff access to certain data systems was removed such ATS and ARIS;

(10) Plaintiff has been harassed in an effort to force her to resign;

(11) Plaintiff was falsely accused of not following procedures;

(12) False accusations were asserted against Plaintiff regarding corporal punishment, and other false charges such as the OSI report dated June 25, 2014, a letter dated November 18, 2013, March 7, 2013, March 24, 2014, October 1, 2012 and an undated letter and undated end of year summary.

(13) Being denied per session work

51. Plaintiff has been subjected to a disparate treatment and a hostile work environment due to her gender and retaliation for complaining about gender discrimination and due to petitioning the government concerning matters of public concern.

### FIRST CLAIM FOR RELIEF-DOE ONLY

52. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

53. Plaintiff has been subjected to disparate treatment, a hostile work environment and a discriminatory termination based on her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq.

## SECOND CLAIM FOR RELIEF-DOE ONLY

54. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

55. Plaintiff has been subjected to disparate treatment, hostile work environment and a discriminatory termination based on retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq.

## AS AND FOR A THIRD CLAIM FOR RELIEF- US CONSTITUTION- FIRST AMENDMENT- AGAINST ALL DEFENDANTS

56. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

57. Defendants violated the First Amendment of The United States Constitution by retaliating against for filing a police report on matters of public concern relating to safety issues.

58. Plaintiff's advocacy was separate and apart from the job duties she had as an Assistant Principal but rather as a citizen regarding matters which are of a public concern and interest. Plaintiff's job responsibilities did not include going filing a police report.

59. As a direct result of Plaintiff's protected activity, Defendants retaliated against Plaintiff as set forth above including her termination.

60. Based upon the foregoing, Defendants retaliated against Plaintiff as set forth above in violation of the First Amendment of the U.S. Constitution.

61. There were no legitimate reasons for Defendants actions except retaliation due to Plaintiff's exercise of her First Amendment rights.

62. As a result of Defendants' actions, Plaintiff suffered emotional pain and humiliating irreparable damage to her reputation and was damaged. Defendants actions have injured Plaintiff in her employment.

63. Defendants deprived plaintiff of such rights under color of State Law.

64. As a result of Defendant's actions in retaliating against Plaintiff for her speech, Plaintiff has been damaged.

## **PLAINTIFF HEREIN DEMANDS A JURY TRIAL**

WHEREFORE, Plaintiff respectfully requests a judgment against DefendantS as follows:

1. Enter a judgment declaring that Defendants' patterns, practices and omissions, as described above, violate the law and reinstatement retroactively to the position she would have been in but for the discrimination, retaliation and first amendment violation;

2. Enter a judgment and award in favor of Plaintiff and against Defendant for reasonable monetary damages and all other damages owed to Plaintiff in an amount proven at trial, resulting from Defendants' unlawful acts or omissions including back pay and value of the loss of benefits and pain and suffering and damage to Plaintiff's reputation;

3. Enter a judgment and award in favor of Plaintiff for costs, including but not limited to reasonable attorneys' fees, experts' fees, and other costs and expenses of this litigation;

4. Enter a judgment and award in favor of Plaintiff for pre-judgment interest;

5. Award such other and further legal and equitable relief as may be found appropriate and as this Court may deem just and proper.

Dated: New York, New York
      July 15, 2016

Respectfully submitted,

STEWART LEE KARLIN
LAW GROUP, PC

s/*Natalia Kapitonova*
NATALIA KAPITONOVA, ESQ.
Attorney for Plaintiff
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670

## **VERIFICATION**

STATE OF NEW YORK    )

COUNTY OF NEW YORK)     ss.:

I, the undersigned, an attorney admitted to practice in law in the Courts of New York State, state that I am the attorney of record for the Plaintiff in the within action;  I have read the foregoing, Complaint, and know the contents thereof; the same is true to my own knowledge except as to those matters therein alleged to be on information and belief, as to those matters I believe to be true.

The reason this verification is made by your affirmant and not by the Plaintiff herein is that said Plaintiff resides in a county other than the county where your affirmant maintains his law office.

The grounds of your affirmant's belief as to all matter not stated upon my own knowledge are as follows:

Conversations with the Plaintiff and information contained in the file.


Dated:  New York, New York
         July 15, 2016

                         s/ *Natalia Kapitonova*
                      NATALIA KAPITONOVA, ESQ.

## **ATTORNEY CERTIFICATION**

Pursuant to 22 NYCRR, Section 130-1.1.A the undersigned, an attorney duly admitted to practice law in the Courts of the State of New York, respectfully affirms the truth of the following statement under the penalties of perjury pursuant to the C.P.L.R.:

The undersigned attorney hereby certifies that to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers (s) or the contents therein are not frivolous as defined in Subsection C of Section 130-1.1.

Dated:  New York, New York
           July 15, 2016

s/*Natalia Kapitonova*
NATALIA KAPITONOVA, ESQ.