UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
            :

LEANNA MERCEDES,        :
            :
           Plaintiff,   :
            :
   - against -      :
            :

THE DEPARTMENT OF EDUCATION OF :
THE CITY OF NEW YORK,    :
            :
          Defendant.  :
            :
            :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____9/28/2018_____

16-CV-3284 (VSB)

**OPINION & ORDER**

Appearances:

Natalia M. Kapitonova
Stewart L. Karlin
Stewart Lee Karlin Law Group, P.C.
New York, New York
*Counsel for Plaintiff*

Justin W. Reiter
Heather M. Martone
New York City Law Department
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Leanna Mercedes brings this action under Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, against the Department of Education of the City

of New York (the "DOE") alleging claims of disparate treatment and hostile work environment

based on her gender as well as retaliation in response to her complaints of discrimination.[1]

---

[1] Plaintiff's amended complaint, (Doc. 13), includes First Amendment claims against the DOE and Emmanuel
Polanco, the principal at the school where Plaintiff was employed.  Because I dismissed the First Amendment claims

Before me is the DOE's motion for summary judgment. Because I find that no genuine factual dispute exists, the DOE's motion for summary judgment is GRANTED as to all of Plaintiff's claims, and the claims are dismissed.

## I.     Background[2]

Plaintiff is a former assistant principal and is still employed by the DOE. (Pl.'s 56.1 ¶ 1.)[3] She began her career at the DOE in 2006 as an English teacher at Isobel Rooney Middle School 80 / J.H.S. 080 The Mosholu Parkway ("M.S. 80"). (*Id.* ¶ 11.) She became a dean of M.S. 80 in September 2008, and after completing a leadership program and residency at M.S. 454 from the summer of 2010 to February 2011, became interim-acting assistant principal in August 2011, and was subsequently appointed assistant principal in February 2012. (*Id.* ¶¶ 12–14.)

### A.     *2011-2012 School Year*

Emmanuel Polanco became the interim acting principal at M.S. 80 in April 2012. (*Id.* ¶ 15.) Polanco gave Plaintiff a "D" (doubtful) rating in her annual review for the 2011 to 2012 school year. (*Id.* ¶ 16.) Polanco signed the evaluations as the "Rating Officer" for Plaintiff's 2011 to 2012 evaluation. (*See* Martone Decl. Ex. D.)[4] His reasoning for giving Plaintiff the "D"

---

in my Opinion & Order granting the DOE's and Polanco's motion to dismiss, (Doc. 29), the First Amendment claims and claims against Polanco are not at issue in the instant Opinion & Order.

[2] The facts in this background section are undisputed unless otherwise noted.

[3] "Pl.'s 56.1" refers to Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts that was filed as the corrected response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Defendant's 56.1 Statement"), filed August 2, 2017. (Doc. 48-2.) Plaintiff originally filed her response to Defendant's Rule 56.1 Statement on July 28, 2017, (Doc. 42), but requested leave to file a revised version correcting several clerical errors, (Doc. 48), which I granted, (Doc. 49). I will therefore use the corrected version filed on August 2, 2017 for the purpose of this Opinion & Order. References to individual paragraphs of Plaintiff's response to Defendant's Rule 56.1 Statement are to Defendant's statements, Plaintiff's responses, or both.

[4] "Martone Decl." refers to the Declaration of Heather Martone in Support of Defendant's Motion for Summary Judgment, filed June 15, 2017. (Doc. 35.) The exhibits attached to the Martone Declaration do not have continuous page numbers, and thus I refer to the page numbers designated by the court's electronic case filing system ("ECF").

rating was that her "[o]bservations . . . were not done timely," it was "unclear what benchmark expectations were made prior to [his] arrival as principal," and "expectations [were] only partially met." (*Id.* at 4; *see also* Pl.'s 56.1 ¶ 16.) Polanco gave Plaintiff a "D" rating despite the previous principal, Lovey Mazique Rivera, giving Plaintiff an "S" (satisfactory) rating for her mid-year review in February 2012. (Pl.'s 56.1 ¶ 16; Mercedes Decl. ¶ 2.)[5] Polanco gave both of Plaintiff's assistant principal co-workers, who were male, "S" (satisfactory) ratings. (Mercedes Decl. ¶ 2.)

The parties disagree about whether Superintendent Sonia Menendez received Plaintiff's 2011 to 2012 evaluation. (*See* Pl.'s 56.1 ¶ 17; *see also* Menendez Dep. 17:21-18:4, 24:5-10, 32:4-7, 33:5-9.)[6] However, Plaintiff and the DOE agree that Superintendent Menendez did not sign-off on any evaluations in the 2011 to 2012 school year for M.S. 80 because the school was going through a transition and it was unclear who the rating officer for M.S. 80 was. (*See* Pl.'s 56.1 ¶ 18.)

On July 18, 2012, Plaintiff filed her first complaint with the DOE's Office of Equal Opportunity and Diversity Management ("OEO") against Polanco, alleging that he discriminated against her based on her gender and ethnicity and retaliated against her in violation of Chancellor's Regulation A-830 (the "July 2012 OEO Complaint"). (Pl.'s 56.1 ¶ 46; *see also* Martone Decl. Ex. T; Mercedes Decl. ¶ 3.) In the July 2012 OEO Complaint, Plaintiff claimed that although Polanco did not make any discriminatory comments towards her, he treated her differently than the male assistant principals and gave her a "D" rating—despite giving the other

<hr />

[5] "Mercedes Decl." refers to the Declaration of Leanna Mercedes in Opposition to Defendant's Motion for Summary Judgment, filed July 28, 2017. (Doc. 43.)

[6] "Menendez Dep." refers to the deposition of Sonia Menendez, taken January 23, 2017, and attached as Exhibit E to the Martone Declaration. (Doc. 35-6.)

two male assistant principals "S" ratings—because of her gender. (*See* Martone Decl. Ex. T, at 2–4.) After investigating the claim and conducting several interviews, the OEO found that Plaintiff's allegations that Polanco discriminated and retaliated against her based on her gender were unsubstantiated.[7] (*Id.* at 12; *see also* Pl.'s 56.1 ¶ 47.) The OEO found insufficient evidence with respect to gender discrimination because there was evidence that Polanco "always treated female staff members in a 'professional' manner." (Martone Decl. Ex. T, at 11.) Further, the OEO found that there was evidence that Polanco had considered replacing both Plaintiff and one of the male assistant principals, which "indicated that . . . Polanco was not favoring any [assistant principals] because of their gender." (*Id.* at 11–12.) The OEO also found insufficient evidence to support Plaintiff's allegations that Polanco retaliated against her because Plaintiff "told the OEO that she never told anyone about filing the OEO complaint," and because Polanco told the OEO that the decision regarding Plaintiff's rating had been made by M.S. 80's Human Resources and Legal teams. (*Id.* at 12.) The OEO found that "Polanco had a legitimate, non-discriminatory reason for changing [Plaintiff's] rating and taking steps to discontinue her license," (*id.*), and notified Plaintiff that the appeal of her "D" rating was denied on July 19, 2013, (*see* Karlin Decl. Ex. 1, at 2).[8]

Plaintiff appealed the OEO's decision to the Office of Counsel, and on October 31, 2016, Commissioner Elia issued a decision sustaining the appeal and directing the Board of Education of the City School District of the City of New York to remove Plaintiff's "D" rating for the 2011 to 2012 school year. (*Id.* at 4.) The Commissioner found that "[t]he record [was] devoid of any

---

[7] The OEO found that Polanco did violate Chancellor's Regulation A-830 when, on one occasion, he told a student that "[o]nly Dominican women do that" after observing the student remove her shoes. (Martone Decl. Ex. T, at 12.)

[8] "Karlin Decl." refers to the Declaration of Stewart Karlin in Opposition to Defendant's Motion for Summary Judgment, filed July 28, 2017. (Doc. 44.) The page numbers in the exhibits of the Karlin Declaration do not have continuous page numbers, and I thus refer to the page numbers provided to the documents by ECF.

support for [Plaintiff's] 'D' rating" because "the sole reason given for sustaining the rating [was] that [Polanco] had insufficient time to accurately assess [Plaintiff's] performance." (*Id.* at 3.) The Commissioner further noted that he gave the two male assistant principals "S" ratings and that "assigning a rating based on the principal's inability to rate the employee's performance lacks a rational basis and is arbitrary and capricious." (*Id.* at 3–4.)

### B.    *2012-2013 School Year*

On August 30, 2012, at the beginning of the 2012 to 2013 school year, Polanco met with Plaintiff regarding her assignments, roles, and goals for the 2012 to 2013 school year. (*Id.* Ex. 2, at 2.) During their conversation, Polanco told Plaintiff that although he knew that Plaintiff "worked hard and was very dedicated," she "fell short" of his expectations. (*Id.*) He also stated that he had been "very forgiving" in giving Plaintiff a "D" rating because she failed to submit her observations on time. (*Id.*) According to Plaintiff, Polanco then told Plaintiff that he knew that she did not want to work at M.S. 80 because she had reached out to other employees about moving, and that he knew that Plaintiff had filed a grievance but that he "did not know where that was coming from." (*Id.* at 2–3.)

Polanco provided Plaintiff with letters on September 10, 2012 and October 1, 2012 regarding Plaintiff's violations of the Chancellor's Regulations, as well as a letter on December 7, 2012 alerting her of her failure to complete her teacher observations, which he attached to the 2012 to 2013 evaluation form. (*See* Pl.'s 56.1 ¶¶ 20, 23, 27; *see also* Martone Decl. Exs. G, H, J.) On September 10, 2012, Polanco sent Plaintiff a letter explaining that she had "authorized a trip to Chelsea Piers Bowling Lanes on Polanco's behalf without Polanco's consent or permission," violating Chancellor's Regulation A-670 requiring school trips to be approved by the principal. (Pl.'s 56.1 ¶ 20.)

On October 1, 2012 Polanco sent Plaintiff another letter stating that Plaintiff had violated Chancellor's Regulation A-420—prohibiting corporal punishment—when she "forced students to clean the cafeteria as punishment on May 30, 2012." (*Id.* ¶ 23.) In the letter, Polanco noted that he had told Plaintiff on May 10, 2012, both verbally and by email that "community service was not to be used as punishment for students." (*Id.* ¶ 24.) In addition, Polanco sent an email to all of the assistant principals, including Plaintiff, on May 10, 2012 specifically stating "although community service is great for students to perform, let's not use it as a consequence." (*Id.* ¶ 25 (quoting Martone Decl. Ex. I).)

On December 7, 2012, Polanco sent Plaintiff a letter explaining that she had failed to complete her teacher observations by the deadline. Despite being instructed to (1) conduct two informal teacher observations per month, and (2) conduct one formal observation per teacher and submit those observations to Polanco electronically by December 5, 2012, Plaintiff did not submit any observations by the deadline. (*Id.* ¶ 28; *see also* Mercedes Decl. ¶ 13 (stating that Plaintiff had some handwritten observations but had not submitted them to Polanco in electronic form).) Although Polanco gave Plaintiff three additional opportunities to complete the observations, when Polanco met with Plaintiff on January 10, 2013, she still had not provided Polanco with her observations. (Pl.'s 56.1 ¶ 28; Mercedes Decl. ¶ 13.)

As a result, Polanco gave Plaintiff a "U" (unsatisfactory) rating for the 2012 to 2013 school year. The reasons given by Polanco for giving Plaintiff a "U" rating were that Plaintiff (1) had four substantiated counts of corporal punishment in violation of Chancellor's Regulation A-420; (2) did not submit the required observations after being provided four opportunities to do so; and (3) authorized a school trip to Chelsea-Bowling without Polanco's approval in violation of Chancellor's Regulation A-670. (*See* Pl.'s 56.1 ¶ 19; *see also* Martone Decl. Ex. F.) Polanco

also included an end-of-year summary which detailed three areas where Plaintiff's performance fell below his expectations—"improving the culture of M.S. 80 by addressing the academic and socio-emotional and developmental needs of at-risk students in order to make dramatic gains, . . . increasing the competency of teachers and support staff in the use of data to improve student learning in the classroom and to increase student performance in the NYS Science exam by 5%, and . . . increasing teacher pedagogy and effectiveness in the classroom by guiding and supporting them to utilize the newly adopted Common Core Standards in order to develop higher quality lessons in relation to student engagement and student empowerment." (Pl.'s 56.1 ¶ 31; *see also* Martone Decl. Ex. F.) Superintendent Melodie Mashel did not sign-off on Plaintiff's 2012 to 2013 evaluation.[9] (Pl.'s 56.1 ¶¶ 32–33.)

Plaintiff appealed her "U" rating for the 2012 to 2013 school year to the New York Department of Education Office of Appeals and Reviews ("OAR"). (Pl.'s 56.1 ¶ 34; Martone Decl. Ex. M.) The OAR issued its recommendation on May 22, 2014 recommending that the Chancellor's Committee deny the appeal and sustain the "U" rating. (*See* Martone Decl. Ex. M.) OAR found that the "Documentation submitted by the Rating Officer and his testimony were thorough and comprehensive" and that in her testimony Plaintiff "verifie[d] that she missed numerous deadlines for the submission of her observations to the Rating Officer" and that the "Rating Officer's investigation and conclusion of the A-420 violation were reviewed by the Confidential Investigator and found to be appropriate." (*Id.* at 4.) Therefore, the OAR recommended denial of the appeal based on (1) Plaintiff planning a school trip without Polanco's authorization, (2) Plaintiff failing to submit her mandated teacher observations, and (3)

---

[9] Superintendent Mashel explained in her deposition that her failure to sign-off on the evaluation did not mean she disagreed with the "U" rating. (Mashel Dep. 61:4–8.) Plaintiff maintains that Mashel never received the evaluation. (Mercedes Decl. ¶ 25.) "Mashel Dep." refers to the deposition of Melodie Mashel, attached as Exhibit L to the Martone Declaration. (Doc. 35 Ex. L.)

Plaintiff's violation of Chancellor's Regulation A-420. (Pl.'s 56.1 ¶ 35.) The Chancellor's Committee adopted OAR's recommendation, denying Plaintiff's appeal and sustaining her "U" rating "as a consequence of failure to follow supervisory directives and violation of Chancellor's Regulation A-420." (*Id.* ¶ 36 (quoting Martone Decl. Ex. N).)

In addition to appealing her "U" rating, Plaintiff filed two additional complaints with the OEO related to the 2012 to 2013 school year. The first, filed on December 18, 2012, again alleged gender discrimination and retaliation—specifically that Polanco treated Plaintiff differently because of her gender and that he retaliated against her for filing the July 2012 OEO Complaint (the "December 2012 OEO Complaint'). (*See* Martone Decl. Ex. U; *see also* Pl.'s 56.1 ¶ 52.) Plaintiff's belief that Polanco treated her differently was based in part on the fact that Polanco called her to a disciplinary conference after she failed to submit her teacher observations, but a male assistant principal who had also failed to submit his observations was not called to a disciplinary meeting. (*See* Martone Decl. Ex. U, at 2–3.) She also asserted that that Polanco generally talks down to women and changes his tone of voice when speaking to female employees; however, the OEO report, dated January 14, 2014, notes that Plaintiff was unable to provide any specific examples of this conduct. (*Id.* at 3.) After its investigation, the OEO found that "Polanco had a legitimate, non-retaliatory reason for issuing [Plaintiff] a letter-to-file, namely that she had not met the deadline nor did she follow . . . Polanco's instructions regarding how to submit the completed observations." (*Id.* at 6.) The OEO also found that because Plaintiff was "unable to provide any specific instances when [Polanco's tone of voice changed or he talked down to women]," there was insufficient evidence that Polanco had acted in a discriminatory fashion based on Plaintiff's gender. (*Id.*) Thus, the investigation "did not substantiate that . . . Polanco violated Chancellor's Regulation A-830," (*id.*), related to

discrimination, N.Y.C. Dep't of Ed., Regulation of the Chancellor, A-830 (Mar. 1, 2018).

On July 10, 2013, Plaintiff filed her second complaint for the 2012 to 2013 school year, alleging that Polanco retaliated against her for her previous OEO complaints by giving her a "U" rating (the "July 2013 OEO Complaint"). (Pl.'s 56.1 ¶ 56; *see also* Martone Decl. Ex. V; Karlin Decl. Ex. 4.) The OEO started its investigation and conducted an interview with Plaintiff, (*see* Karlin Decl. Ex. 4, at 4; Martone Decl. Ex. V, at 2), but Plaintiff subsequently withdrew the July 2013 OEO Complaint by calling the OEO to request her complaint be withdrawn on August 28, 2013, and emailing OEO a signed withdrawal form on October 17, 2013,[10] (Martone Decl. Ex. V, at 3; *see also* Pl.'s 56.1 ¶ 56).[11]

## C.    *2013-2014 School Year*

Plaintiff again received a "U" rating from Polanco for the 2013 to 2014 school year. In the evaluation, Polanco explained that Plaintiff received a "U" rating based on two incidents of professional misconduct, four incidents of corporal punishment, her performance expectations not being met, and violation of Chancellor's Regulation A-670. (*See* Pl.'s 56.1 ¶ 37; *see also* Martone Decl. Ex. O, at 5, 8.)

With respect to the incidents of professional misconduct, Polanco supported his evaluation with letters that he had previously sent to Plaintiff regarding the incidents. The first

---

[10] Plaintiff states that she was asked to withdraw the complaint by Superintendent Mashel. (Pl.'s 56.1 ¶ 56.)

[11] Exhibit 4 of the Karlin Declaration includes a letter addressed to Plaintiff dated June 14, 2013 stating that the OEO "substantiated [Plaintiff's] allegation that . . . Polanco violated Chancellor's Regulation A-830." (Karlin Decl. Ex. 4, at 2.) It is not clear why this document is an exhibit or to what OEO complaint it might relate. First, the Karlin Declaration identifies the document as "Plaintiff's EEO complaints." Second, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Amended Complaint does not appear to reference the document. Third, the letter does not appear to be related to any OEO report, and the letter is dated June 14, 2013— approximately a month before Plaintiff filed her July 2013 OEO Complaint. Finally, Plaintiff concedes that she withdrew the July 2013 OEO Complaint, (*see* Pl.'s 56.1 ¶ 56), and the OEO's report itself states that Plaintiff "withdrew her retaliation complaint" and that the "OEO w[ould] not take any further action and will administratively close the complaint," (Martone Decl. Ex. V, at 3). In light of these facts, I do not consider Exhibit 4 of the Karlin Declaration.

was on November 18, 2013 describing an incident where Plaintiff "undermined Polanco's authority in front of a student" by taking out a book and beginning to read while Polanco tried to convince the student to go to class, (Pl.'s 56.1 ¶ 38), and the second on March 24, 2014 describing an incident where Plaintiff "impermissibly told a staff member to use her cell phone to call the school's parent coordinator and tell her that she did not need to come in to work on the day of a snow storm," and when the staff member refused to call, making the call herself, (*id.* ¶ 40).

Regarding the incidents of corporal punishment, on May 6, 2014, the DOE's Office of Special Investigations ("OSI") received a complaint that Plaintiff "snatch[ed] a student's cell phone, push[ed] the student multiple times, h[eld] onto the student, pull[ed] the student by her shirt, and caus[ed] the student to sustain red marks on her neck from the incident." (*Id.* ¶ 41.) OSI investigated and substantiated the incident—it found that Plaintiff "engaged in a tug-of-war with a student over her cell phone and pulled the cell phone out of the student's hand," and found Plaintiff committed employee misconduct. (*Id.*) Plaintiff denies she committed employee misconduct. (*Id.*)

### D.   *The Termination of Plaintiff's Employment*

In November of 2013, Polanco hired Carmen Soto, a female employee who, according to Plaintiff, was "immediately given responsibilities in her area of expertise, English Language Arts, and an office to secure her belongings." (*Id.* ¶ 43.) Soto worked 3 to 4 days a week, on a part-time basis. (*Id.*) In March of 2014, Polanco hired Soto as a new part-time assistant principal. (*Id.*) She was provided with her own office and a computer, (*id.* ¶¶ 43–44), while Plaintiff had always been required to sit at a desk in the main office without a telephone or a computer, (Karlin Decl. Ex. 8 ¶ 3; *id.* Ex. 9 ¶ 3; *id.* Ex. 13 ¶ 3).

Plaintiff's employment was terminated as an assistant principal at M.S. 80 on January 12, 2015. (Pl.'s 56.1 ¶ 57.) Polanco recommended that Plaintiff be terminated based on: "(1) one Doubtful rating, (2) two Unsatisfactory ratings, (3) five letters to file memorializing a failure to discharge professional responsibilities, (4) two acts of professional misconduct, and (5) two violations of Chancellor's Regulation A-420 (Corporal Punishment)." (*Id.* ¶ 58.) OAR unanimously concurred with Polanco's recommendation to terminate Plaintiff's employment, finding that the "testimony of the Rating Officer were thorough and comprehensive" and focusing particularly on the two counts of corporal punishment that were confirmed by the OSI investigation. (Martone Decl. Ex. W.) Soto became the full-time assistant principal upon the termination of Plaintiff's employment. (Pl.'s 56.1 ¶ 45.)

## II.    **Procedural History**

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Office ("EEOC") on April 17, 2015, (Pl.'s 56.1 ¶ 5; Martone Decl. Ex. A), and commenced the instant action in the Supreme Court of the State of New York on April 2, 2016, (Doc. 1). On May 4, 2016, the two Defendants in the state court action—the DOE and Polanco (the "Defendants")—removed the case to this Court and the case was assigned to me. (*Id.*) On May 20, 2016, Defendants then requested a pre-motion conference to discuss their anticipated motion to dismiss, (Doc. 5), to which Plaintiff responded on May 25, 2016, (Doc. 7). I granted Defendants' request and held a conference regarding the Defendants' anticipated motion on June 16, 2016.

Plaintiff filed an amended complaint on July 18, 2016 (the "Amended Complaint"), (Docs. 12, 13),[12] and on August 11, 2016 Defendants filed their motion to dismiss the Amended

---

[12] Plaintiff attempted to file her Amended Complaint on July 15, 2016, (Doc. 12), but it was rejected due to a filing

Complaint's First Amendment claims, along with their memorandum of law and declaration in support, (Docs. 15–17). Plaintiff filed her opposition on September 27, 2016, (Doc. 20), and Defendants filed their reply on October 11, 2016, (Doc. 23). On March 2, 2017, I issued a Memorandum & Order granting Defendants' motion to dismiss the Amended Complaint.[13] (*See* Doc. 29.)

On April 3, 2017, the DOE filed a letter requesting a pre-motion conference in anticipation of its motion for summary judgment. (Docs. 30, 33.)[14] Plaintiff filed her response on April 6, 2017, (Doc. 32), and on April 13, 2017, I conducted a pre-motion conference and set a briefing schedule for the DOE's summary judgment motion. The DOE filed its motion for summary judgment, along with its memorandum of law, declaration, and Rule 56.1 Statement in support of its motion on May 18, 2017. (Docs. 34–37.) After receiving an extension of time, Plaintiff filed her memorandum of law in opposition, along with declarations and a counter-statement to the DOE's Rule 56.1 Statement, on July 28, 2017. (Docs. 42–45.) Plaintiff subsequently filed a corrected memorandum of law in opposition and a corrected counter-statement to the DOE's Rule 56.1 Statement which corrected clerical errors in the title page. (Docs. 47, 48.) The DOE filed its reply in support of its motion on August 11, 2017. (Doc. 50.)

### III.   <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

---

error. The amended complaint was not accepted for filing until July 18, 2016, (Doc. 13), and the Defendants consented to the late filing without "waiving any claims or defenses," (Doc. 14).

[13] Because Plaintiff's only claim against Polanco in the Amended Complaint was the First Amendment claim, (*see* Doc. 13 at 11–13), which I dismissed in my Opinion & Order granting Defendants' motion to dismiss, (Doc. 29), Polanco is terminated from the instant action.

[14] The DOE's first letter was rejected due to a filing error, and thus the DOE re-filed its letter on May 18, 2017. (Doc. 33.)

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and

may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Additionally, the court must exercise "an extra measure of caution" in determining whether to grant summary judgment in employment discrimination cases "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). Nevertheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

IV. <u>Discussion</u>

Plaintiff alleges disparate treatment, hostile work environment, and retaliation claims under Title VII for the termination of her employment as an assistant principal. The DOE argues that (1) Plaintiff's claims that accrued prior to June 21, 2014 are time-barred, and (2) there is no genuine issue of material fact with respect to Plaintiff's claims, and thus the DOE is entitled to summary judgment.

A. *Timeliness*

Title VII claims are timely when the "alleged discriminatory conduct . . . occurred less than 300 days prior to the filing of the EEOC charge." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 300 (S.D.N.Y. 2016); *see also* 42 U.S.C. § 2000e-5(e)(1). When certain of a plaintiff's

14

allegations occurred prior to 300 days before the filing of an EEOC charge, "the nature of the claim determines what consideration will be given to the earlier conduct." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004). Claims "may not be based on discrete acts falling outside the limitations period," but evidence of earlier behavior "may constitute relevant background evidence in support of a timely claim." *Id.* (internal quotation marks omitted).

Under the continuing violation exception, however, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (internal quotation marks omitted). The continuing violation doctrine does not apply to a series of discrete acts "such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). However, the doctrine may apply to a claim for an allegedly hostile work environment because the "very nature [of the claim] involves repeated conduct." *Id.* at 115; *see also Chin*, 685 F.3d at 156. Thus, with regard to a hostile work environment claim, "the statute of limitations requires that only one . . . act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of hostile environment' in determining liability.'" *Petrosino*, 385 F.3d at 220 (quoting *Morgan*, 536 U.S. at 117).

Plaintiff filed her charge with the EEOC on April 17, 2015, (Pl.'s 56.1 ¶ 5); therefore, to the extent that Plaintiff's claims are based on discrete acts that occurred before June 21, 2014—300 days prior to the filing—those claims are time barred unless the continuing violation doctrine applies. Here, Plaintiff fails to demonstrate how the incidents that occurred prior to June 21, 2014 were part of an ongoing policy or custom of discrimination. Rather, the record

supports the conclusion that these acts—that largely included Polanco's attitude towards and evaluations of Plaintiff—were the discrete acts of one person and not part of a policy of discrimination. *See Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (summary order) (holding that failure to promote claims and negative evaluations do not trigger continuing violation exception); *Glaser v. Fulton-Montgomery Cmty. Coll.*, 50 F. App'x 17, 20 (2d Cir. 2002) (summary order) (holding that promotion denials and related written evaluations were discrete acts and time-barred by Title VII's statute of limitations).

However, Plaintiff's claim that her employment was terminated as an assistant principal on January 12, 2015 falls within the limitations period. Therefore, I will consider this claim, and will consider events occurring outside of the limitations period only as background evidence supporting this timely claim.[15] Further, for the purpose of Plaintiff's hostile work environment claim, I will consider events occurring prior to June 21, 2014.

**B.** *Discrimination Claims*

**1. Applicable Law**

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

---

[15] Although the Amended Complaint lists other actions as evidence of discrimination, (*see* Am. Compl. ¶¶ 52–55), Plaintiff's memorandum of law only discusses standards for "termination of employment" and "retaliatory termination," (Pl.'s Opp. 5–6). Further, the parties do not seem to dispute that the "adverse employment action" for the purpose of Plaintiff's discrimination and retaliation claims arise out of the termination of Plaintiff's employment as an assistant principal, (*see* Def.'s Mem. 10; Pl.'s Opp. 5–7), and even if this were disputed, the other actions, which involve Polanco's attitude towards Plaintiff and his evaluations of her, do not constitute an "adverse employment action" for the purpose of a discrimination claim, *see Valtchev*, 400 F. App'x at 589; *Glaser*, 50 F. App'x at 20.

"Am. Compl." refers to Plaintiff's Amended Complaint, filed July 18, 2016. (Doc. 13.) "Pl.'s Opp." refers to Plaintiff's Corrected Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed July 31, 2017. (Doc. 47.) "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, filed June 15, 2017. (Doc. 37.)

origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, discrimination claims on the basis of gender are analyzed under the familiar three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016) (analyzing gender discrimination claims brought pursuant to Title VII under *McDonnell Douglas*); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 571–72 (S.D.N.Y. 2012) (same). First, the employee bears the burden of setting forth a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To set forth a prima facie case of discrimination, a plaintiff must show (1) he or she belongs to a protected class; (2) he or she was qualified for the position at issue; (3) he or she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *See Moccio*, 889 F. Supp. 2d at 75.

The Second Circuit has emphasized that the "burden of establishing a *prima facie* case is *de minimis*." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (collecting cases). "A plaintiff is not required to prove the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision." *Moccio*, 889 F. Supp. 2d at 572 (internal quotation marks omitted). Rather a plaintiff is required to show that "plaintiff's protected status contributed to the employer's decision." *Id.* (quoting *Finn v. N.Y. State Office of Mental Health Rockland Psychiatric Ctr.*, No. 08 CV 5142(VB), 2011 WL 4639827, at *11 (S.D.N.Y. Oct. 6, 2011)). A plaintiff may not "offer[] purely conclusory allegations of discrimination . . . absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

In order to establish that she was qualified for the position—the second element of the prima facie case—a plaintiff must provide more than "vague and conclusory statements" that

indicate "skills or experience preparing her to assume the position," including "employer evaluations reporting strong job performance." *Ortega v. N.Y.C. Off-Track Betting Corp.*, No. 97 Civ. 7582(KMW), 1999 WL 342353, at *5 (S.D.N.Y. May 27, 1999); *see also Meckenberg v. N.Y.C. Off-Track Betting*, 42 F. Supp. 2d 359, 378 (S.D.N.Y. 1999). Further, to establish the fourth element of the prima facie case a plaintiff must demonstrate that "the employer treated plaintiff less favorably than a similarly situated employee outside [the] protected group," and the plaintiff must show that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted); *see also Graham*, 230 F.3d at 39.

If a plaintiff successfully presents a prima facie case of discrimination, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for the adverse employment action. *See Abdu-Brisson*, 239 F.3d at 466, 468–69. The defendant's burden at this stage is also "light." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). In other words, as long as the "explanation provided . . . [is] legally sufficient to justify a judgment for the defendant" and the defendant "clearly set[s] forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection," the presumption raised by the prima facie case is rebutted. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

Lastly, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the proffered reason is a pretext for discrimination. *See United States v. City of New York*, 717 F.3d 72, 102 (2d Cir. 2013). However, "the plaintiff is not required to show that

the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb*, 521 F.3d at 138 (internal quotation marks omitted).

In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). "To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted), *cert. denied*, 540 U.S. 811 (2003); *see also Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir. 2000) (affirming summary judgment in favor of defendant where plaintiff failed to present evidence upon which a reasonable jury could conclude that age was a "determinative factor" in adverse employment action). "Though the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' it may often be carried by reliance on the evidence comprising the prima facie case, without more." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) (quoting *Burdine*, 450 U.S. at 256). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

### 2. Application

Plaintiff alleges that Polanco discriminated against her based on her gender by terminating her employment as an assistant principal on January 12, 2015. (*See* Am. Compl. ¶¶ 50–53; *see also* Pl.'s Opp. 5–6.) Although the parties do not dispute that Plaintiff belongs to a

protected class and suffered an adverse employment action when she was terminated from her employment as assistant principal,[16] satisfying the first and third elements of a prima facie case, the Defendant disputes whether she was qualified for the position and whether the termination of her employment occurred under circumstances giving rise to an inference of discrimination. (*See* Def.'s Mem. 5–10.)

As an initial matter, Plaintiff mistakenly asserts that there is no dispute that she was qualified for the position of assistant principal. (Pl.'s Opp. 6.) Despite this error, I find that Plaintiff's evidence is sufficient—albeit just barely—to satisfy the de minimis burden required for a prima facie case of discrimination. Specifically, with respect to the second element— whether she was qualified for the position—Plaintiff has offered evidence that the previous principal, Rivera, gave Plaintiff a "S" rating for her mid-year review in February 2012, and that she was performing the job duties of an assistant principal before Polanco became principal, (*see* Pl.'s 56.1 ¶¶ 14–16; Mercedes Decl. ¶ 2), suggesting that she was qualified for the position. With respect to the fourth element, although Plaintiff admits that Polanco did not directly make discriminatory comments towards her, (Pl.'s 56.1 ¶ 51), Polanco gave both of Plaintiff's assistant principal co-workers, who were male, "S" ratings despite the fact that they were also delayed in

---

[16] Plaintiff lists several allegations in her Amended Complaint as part of her disparate treatment and retaliation claims, including: (1) Polanco subjected Plaintiff to shorter deadlines; (2) Polanco assigned her a different subject area outside of her expertise; (3) Polanco was slow at communicating with Plaintiff; (4) Polanco was not helpful after providing her with her assignments and responsibilities; (5) Polanco "considered [Plaintiff] . . . the lowest in the chain of command among the [Assistant Principals]"; (6) Polanco excluded Plaintiff from meetings; (7) the Superintendent did not sign-off on Plaintiff's evaluations; (8) Polanco rated her "unsatisfactorily"; (9) Plaintiff had been "harassed in an effort to force her to resign"; (11) Plaintiff was "falsely accused of not following procedures; (12) Plaintiff was falsely accused of corporal punishment; and (13) Plaintiff was denied per session work. (Am. Compl. ¶ 50.) These allegations, however, are not discrete acts that are sufficient to show an "adverse employment action," for the purpose of a Title VII claim, which requires a "materially adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Further, both Plaintiff and the DOE seem to agree that the "adverse employment action" for the purpose of Plaintiff's discrimination and retaliation claims arise out of the termination of Plaintiff's employment as an assistant principal. (*See* Def.'s Mem. 10; Pl.'s Opp. 5–7.) I will thus consider these allegations as part of my analysis of Plaintiff's discrimination claim with respect to the termination of her employment.

submitting their observations, (*see id.* ¶ 16). Plaintiff also provides evidence that she was required to sit at a desk in the main office without a telephone or a computer, while her male co-workers were provided with their own offices. (*See* Mercedes Decl. ¶ 19; Karlin Decl. Ex. 8 ¶ 3; *id.* Ex. 9 ¶ 3; *id.* Ex. 13 ¶ 3.) This is enough to demonstrate that Polanco "treated plaintiff less favorably than a similarly situated employee outside [the] protected group"—he treated the male assistant principals, those with the same job title as Plaintiff, more favorably than her. *See Mandell*, 316 F.3d at 379 (internal quotation marks omitted). Thus, Plaintiff has provided sufficient evidence, although barely, for a prima facie case, as the "'minimal' burden of establishing a prima facie case can be satisfied in a variety of ways." *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 371 (S.D.N.Y. 2013) (internal citation omitted).

Although Plaintiff has put forth a prima facie case, the DOE has provided legitimate, non-discriminatory reasons for the termination of Plaintiff's employment. The record contains evidence that Plaintiff (1) had several substantiated claims of corporal punishment in violation of Chancellor's Regulation A-420, (2) consistently failed to submit her observations and missed deadlines, and (3) engaged in professional misconduct during the course of the 2012 to 2013 and 2013 to 2014 school years. (*See* Pl.'s 56.1 ¶¶ 19–38.) Specifically, with respect to corporal punishment, the OSI received a complaint that Plaintiff had "push[ed a] student multiple times" and "pull[ed a] student by her shirt," a claim which the OSI investigated and ultimately substantiated. (*Id.* ¶ 41.) Further, when Plaintiff appealed her "U" rating for the 2012 to 2013 school year, the OAR recommended that the Chancellor's Committee deny the appeal based on Plaintiff missing numerous deadlines and violating Chancellor's Regulation A-420. (*See* Martone Decl. Ex. M.) The Chancellor's Committee adopted the OAR's recommendation, denied Plaintiff's appeal, and sustained her "U" rating, finding that she had "fail[ed] to follow

supervisory directives" and had violated Chancellor's Regulation A-420. (Pl.'s 56.1 ¶ 36; *see also* Martone Decl. Ex. N.) Therefore, the DOE has "clearly set forth, through the introduction of admissible evidence, the reasons for the [termination of] plaintiff's [employment]," and has rebutted the presumption raised by the prima facie case. *See Burdine*, 450 U.S. at 255.

Because the DOE has provided legitimate, non-discriminatory reasons for Plaintiff's termination, the Plaintiff must demonstrate by a preponderance of the evidence that the proffered reason is a pretext for discrimination. *See Holcomb*, 521 F.3d at 141. I find that Plaintiff has failed to meet this burden, as she has failed to show "both that the [proffered] reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (emphases omitted). Plaintiff admits that she failed to timely submit her observations, (*see* Pl.'s 56.1 ¶ 28; Mercedes Decl. ¶ 13), and that she had been warned, and subsequently investigated, regarding multiple incidents of corporal punishment, (*see* Pl.'s 56.1 ¶¶ 23–25, 41; Martone Decl. Ex. M, at 4). Plaintiff has not identified evidence in the record to support the conclusion that these were not legitimate reasons for her termination. Indeed, not only has Plaintiff failed to provide evidence that these reasons were not legitimate, but Plaintiff admits that Polanco never made any derogatory gender-based statements towards her, (Pl.'s 56.1 ¶ 51), and that Polanco hired a female assistant principal, Soto, to essentially replace her, (*id.* ¶ 43). There is no indication in the record that DOE's explanation for the decision to terminate Plaintiff's employment was a pretext for discrimination, and the fact that the DOE and Polanco hired a female assistant principal to replace Plaintiff suggests that any problems Polanco had with Plaintiff were with her performance rather than with her gender.[17] Thus, Plaintiff has failed to raise a genuine issue of

_____

[17] In her opposition, Plaintiff relies on the "cat's paw" theory of liability to establish pretext. (*See* Pl.'s Opp. 9–10.) However, I do not find the "cat's paw" theory instructive for the purpose of deciding the instant motion because (1) the cases that Plaintiff cites to are not controlling precedent, and (2) I find that the DOE/Polanco have not "exhibited

material fact as to her claim that her employment was terminated as a result of gender discrimination, and the DOE's motion is granted as to this claim.

### C.  *Retaliation*

#### 1.  **Applicable Law**

Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* framework discussed above.  *See supra* Part IV.B.1.  Under this framework, the plaintiff must establish a prima facie case of retaliation by showing (1) participation in a protected activity; (2) the defendant's awareness of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).  "Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action."  *Id.* at 845.  After the defendant has articulated a legitimate, non-retaliatory reason for the employment action, "the presumption of retaliation arising from the establishment of the prima facie case drops from the picture," *id.*, and the "plaintiff 'must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer' for his or her Title VII claim to survive," *Villar v. City of New York*, 135 F. Supp. 3d 105, 136 (S.D.N.Y. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).  The Second Circuit has explained that but-for causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Kwan*, 737 F.3d at 846.

---

discriminatory or retaliatory animus" as necessary to establish liability under this theory.  (*Id.* at 9); *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000).

### 2. Application

Plaintiff alleges that Polanco retaliated against her for filing her discrimination claims with the OEO when he terminated her employment as assistant principal.[18] (*See* Am. Compl. ¶¶ 50–51, 54–55; *see also* Pl.'s Opp. 6.) Plaintiff, however, fails to establish a causal connection between the protected activity—the filing of OEO complaints—and the adverse employment action—the termination of her employment. Plaintiff filed her first complaint with the OEO on July 18, 2012, and filed two subsequent complaints on December 18, 2012 and July 13, 2013. (*See* Pl.'s 56.1 ¶¶ 46, 52, 56.) Plaintiff does not provide any evidence—other than the conclusory statement that she has shown a "causal connection exists between the alleged adverse action and the protected activity," (*see* Pl.'s Opp. 11–12)—that these complaints caused the termination of her employment over a year later, in January of 2015. Although Plaintiff alleges that Polanco knew that she had filed her first complaint with the OEO as early as August 2012, (*see* Karlin Decl. Ex. 2, at 2–3), she was not terminated until 2015, and Plaintiff has failed to demonstrate that there was a causal connection between her filings with the OEO and the termination of her employment in 2015.[19] Indeed, Plaintiff fails to identify any evidence of a causal link, and the passage of over one year is insufficient to create an inference of a causal link. *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that temporal

---

[18] As discussed above, *see supra* note 15, Plaintiff lists several allegations in her Amended Complaint as part of her disparate treatment and retaliation claims, but because these actions are discrete acts that are not sufficient to show an "adverse employment action" for the purpose of a Title VII claim, *see Sanders*, 361 F.3d at 755, and because it appears that Plaintiff and the DOE agree that the "adverse employment action" for the purpose of Plaintiff's discrimination and retaliation claims arise out of the termination of Plaintiff's employment as an assistant principal, (*see* Def.'s Mem. 10; Pl.'s Opp. 5–7), I will consider only the termination as the "adverse employment action."

[19] Although Plaintiff argues that the time between Plaintiff's filing of the July 2012 OEO Complaint and the time when Polanco filed an incident report alleging four counts of corporal punishment was close in proximity and thus sufficient to satisfy the causation element, (Pl.'s Opp. 12–13), the filing of the incident report, which happened four days after Plaintiff's filing of the July 2012 OEO Complaint, is outside the statute of limitations, and furthermore does not constitute an "adverse employment action" for the purpose of a Title VII discrimination claim, *see Sanders*, 361 F.3d at 755.

proximity must be "very close" and that twenty month gap, by itself, does not suggest causation);

*Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (holding that temporal gap of

three-and-a-half months insufficient to establish inference of causation).

Even if Plaintiff were to establish a causal connection between the protected activity and

the adverse employment action, and thus establish a prima facie case of retaliation, the DOE has

provided legitimate non-retaliatory reasons for Plaintiff's termination. Polanco notified Plaintiff

multiple times of her failure to complete her teacher evaluations, (see Pl.'s 56.1 ¶¶ 20, 23, 27),

and Plaintiff was investigated for several incidents of corporal punishment, (*see, e.g.*, Martone

Decl. Ex. M, at 4), including by the OSI, (Pl.'s 56.1 ¶ 41). Thus, the DOE offers valid non-

retaliatory reasons for terminating Plaintiff's employment, and Plaintiff has offered no evidence

to "establish that [her] . . . protected activity was a but-for cause of the alleged adverse action."

*Villar*, 135 F. Supp. 3d at 136 (quoting *Nassar*, 570 U.S. at 362). Accordingly, the DOE's

motion for summary judgment is granted with respect to Plaintiff's Title VII retaliation claim.

### D.   *Hostile Work Environment*

#### 1.   **Applicable Law**

"To defeat a motion for summary judgment on a claim of hostile work environment, 'a

plaintiff must produce evidence that the workplace was permeated with discriminatory

intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions

of the victim's employment.'" *Piccone v. Town of Webster*, 511 F. App'x 63, 64 (2d Cir. 2013)

(summary order) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)); *see also*

*Terry v. Ashcroft*, 336 F.3d 128, 147–48 (2d Cir. 2003) ("[A] plaintiff must show that 'the

harassment was sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'" (quoting *Alfano v. Costello*, 294 F.3d

365, 373 (2d Cir. 2002))). "Whether the challenged conduct is sufficiently severe or pervasive 'depends on the totality of the circumstances.'" *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (quoting *Cruz*, 202 F.3d at 570).

This standard has both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Relevant factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). However, "it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.*

Although hostility of a work environment is assessed considering the "totality of the circumstances," *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007), "[i]t is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination," *Alfano*, 294 F.3d at 377. "Title VII does not create a general civility code for the American workplace, and simple teasing, offhand comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the terms and conditions of employment." *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 51 (2d Cir. 2014) (summary order) (internal citation and quotation marks omitted). "[I]t is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano*, 294 F.3d at 374; *see also Adams*, 560 F. App'x at 51 ("The *sine qua non* of a gender-

based discriminatory action claim under Title VII is that the discrimination must be *because of* sex." (quoting *Patane*, 508 F.3d at 112)). A plaintiff may prove conduct is based on sex "either because the terms are facially sex-related, or because there is some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Adams*, 560 F. App'x at 51 (internal quotation marks omitted).

## 2. Application

Plaintiff's hostile work environment claim is premised on many of the same allegations as her discrimination claim, namely that (1) she was subjected to shorter deadlines; (2) she was assigned to science rather than ELA and Social Studies, which were her areas of expertise; (3) Polanco was slow at communicating with Plaintiff; (4) Polanco did not give her access to systems such as a computer or phone; (5) she was considered the lowest in the chain of command among the assistant principals; (6) she was excluded from meetings; (7) the Superintendent did not sign-off on her evaluations; (8) Polanco rated her poorly; (9) she was not provided with access to data systems that the other assistant principals had access to; (10) she was harassed "in an effort to force her to resign"; (11) she was falsely accused of not following procedures; (12) she was falsely accused of corporal punishment; and (13) she was denied per session work. (*See* Def.'s Mem. 18–19; Am. Compl. ¶ 50.)

I find that Plaintiff has failed to identify sufficient material facts demonstrating that this conduct occurred because of her sex. The record is devoid of any indication that these actions were taken due to Plaintiff's sex—in fact, the only incident in which Polanco made any comment related to sex was when he commented that "[o]nly Dominican women do that" after observing a student remove her shoes, and the OEO quickly addressed and took disciplinary action against Polanco for this statement. (*See* Martone Decl. Ex. T, at 12.) The other actions listed as part of

Plaintiff's hostile work environment claim are not "facially sex-related," nor can it be inferred that these incidents, although neutral on their face, were in fact discriminatory. *See Adams*, 560 F. App'x at 52. Further, as stated above, Polanco hired Soto, a female, to replace Plaintiff as an assistant principal, (Pl.'s 56.1 ¶ 43), and treated Soto in the same manner as the other male assistant principals—including providing Soto with her own office and goals for the school year, (*id.* ¶¶ 43–44). Thus, Plaintiff has failed to demonstrate that the "conduct occurred because of her sex" such that she can maintain a claim for hostile work environment based on sex. *Alfano*, 294 F.3d at 374. Accordingly, the DOE's motion for summary judgment is granted with respect to Plaintiff's hostile work environment claim.

## V. <u>Conclusion</u>

Because Plaintiff has failed to establish any genuine issue of material fact with respect to her Title VII gender discrimination, retaliation, and hostile work environment claims, the DOE's motion for summary judgment is GRANTED in its entirety. The Clerk of the Court is respectfully directed to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: March 31, 2018
     New York, New York

Vernon S. Broderick
United States District Judge